# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| UNITED STATES OF AMERICA | § | |
| :--- | :--- | :--- |
| | § | |
| v. | § | CRIMINAL ACTION NO. 3:19-CR-206-S |
| | § | |
| RANDY STEVEN HANES | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Suppress ("Motion") [ECF No. 52]. Having reviewed the Motion, the Supplemental Brief in Support of Defendant's Motion [ECF No. 56], the Government's Response to the Motion [ECF No. 68], Defendant's Reply [ECF No. 70], the Government's Surreply [ECF No. 75], and the documents filed in support thereof, as well as the arguments and evidence presented at the July 2, 2021 hearing, Defendant's Motion is **DENIED**.

### I. BACKGROUND

On February 23, 2021, Defendant Randy Steven Hanes ("Defendant") was charged in a Third Superseding Indictment with: (1) production of child pornography in violation of 18 U.S.C. § 2251(a) and (e); (2) production of child pornography in violation of 18 U.S.C. § 2251(a) and (e); (3) attempted production of child pornography in violation of 18 U.S.C. § 2251(a) and (e); (4) possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B); (5) possession of prepubescent child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B); and (6) possession of prepubescent child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). *See* Third Superseding Indictment [ECF No. 65] 1-8. The Third Superseding Indictment also contains a forfeiture notice under 21 U.S.C. § 2253. *Id.* at 9-10.

The present dispute arises from two searches: (1) a search of two computers occurring between October 16, 2018, and February 5, 2019, pursuant to a search warrant, *see* Mot. Ex. 2 ("Computer Search Warrant"), signed by the State District Judge in Ellis County, Texas, on

1

November 7, 2018; and (2) a search of 2707 Juniper Drive, Glenn Heights, TX (the "Residence") that occurred on March 21, 2019, pursuant to a search warrant, *see* Mot. Ex. 3 ("Residence Search Warrant"), signed by the same State District Judge on March 18, 2019.

### A. *Search of Computers*

The Computer Search Warrant relied on an affidavit subscribed and sworn to by Detective W.E. Yates #164, a peace officer in the Glenn Heights Police Department. *See* Mot. Ex. 2 ("Yates Affidavit"). In the Yates Affidavit, Detective Yates attested to the following facts:

- On August 21, 2017, Officer J. Cura #172 met with Leigh Ann Hanes, Defendant's wife ("Mrs. Hanes"), regarding a possible child pornography offense. Mrs. Hanes stated that on August 19, 2017, she observed web pages Defendant had visited on their home computer. *Id.*

- Mrs. Hanes stated that she had seen Defendant use a Tor Browser. *Id.*

- Defendant's child had observed Defendant take DVDs and CDs from the Residence and destroy them. *Id.* at 3.

- Mrs. Hanes then took the remaining DVDs and CDs from the Residence and brought them to the Glenn Heights Police Department. *Id.*

- Mrs. Hanes stated that she and Defendant had discussed Defendant's pornography addiction, but that she "failed to realize what kind of porn [Defendant] would watch." *Id.* at 2.

During her meeting with Officer Cura, Mrs. Hanes turned over the following: (1) a black Lenovo computer with serial number ES13051436; (2) a black HP computer with serial number 4CE0380QJ2; and (3) 113 DVDs and CDs. *Id.* Mrs. Hanes also signed a "Permission to Search" form that consented to the search of any property within or outside of the Residence. *See* Resp. Ex. 2. According to the Yates Affidavit, the two computers belonged to both Defendant and Mrs. Hanes. *See* Yates Affidavit at 2.

On November 7, 2018, Detective Yates presented the Yates Affidavit to the State District Judge, who found probable cause and issued the Computer Search Warrant. *See* Computer Search

Warrant at 4. Between October 16, 2018, and February 5, 2018, *see* Mot. Ex. 1 at 2 ("Report of Examination"), Richard Hendrix, of the North Texas Regional Computer Forensic Lab, performed the search and identified possible child pornography artifacts on the hard drives of both computers.

### B. *Search of Residence*

The Residence Search Warrant relied on an affidavit subscribed and sworn by Detective Joshua Kellis #168, a peace officer in the Glenn Heights Police Department. *See* Mot. Ex. 3 at 1 ("Kellis Affidavit"). In the Kellis Affidavit, Detective Kellis attested to the following facts:

- The same facts contained in the Yates Affidavit. *Id.* at 5.

- On December 4, 2018, Detective Yates learned that the North Texas Regional Computer Forensic Laboratory had found over 20,000 child pornography photographs on Defendant's hard drives. *Id.*

- The laboratory also found on Defendant's computer confirmed videos of Defendant's minor daughter exiting the shower. *Id.* at 5-6.

- Detective Yates and Detective Kellis interviewed Mrs. Hanes, Defendant's daughters (A.H., K.K., and M.H.), and Defendant's niece (A.S.). *Id.* at 5-8. AH., K.K., M.H., and A.S. detailed incidents from their childhood suggestive that Defendant committed sexual acts unto or toward them when they were minors—including one individual awaking with Defendant's hand on her breast over her sports bra; one individual regularly waking up in the middle of the night and seeing Defendant standing near her and staring at her while she slept; and one individual recalling "on a few occasions" Defendant having a flashlight and trying to move or raise the covers up while she was sleeping. *Id.* at 6-8.

- On January 25, 2019, Detective Kellis obtained a search warrant to search the DVDs and CDs turned over by Mrs. Hanes and the subsequent search located child pornography. *Id.* at 8.

On March 18, 2019, Detective Kellis presented his affidavit to the State District Judge, who found probable cause and issued the Residence Search Warrant. *Id.* at 9. On March 21, 2019, Glenn Heights Police Department and the Federal Bureau of Investigation ("FBI") executed the Residence Search Warrant—seizing Defendant's phone, additional hard drives and computers,

cameras and undeveloped film, and other electronics. *See generally* Mot. Ex. 4. These items contained additional possible child pornography artifacts. *See* Mot. 17.

## II. ANALYSIS

Regarding the Computer Search Warrant, Defendant asserts that a well-trained officer would have known that the search of Defendant's computers was based on insufficient evidence of probable cause in violation of his Fourth Amendment rights. *See* Mot. 11. Specifically, Defendant argues that the Yates Affidavit was a "bare bones" affidavit containing only conclusory statements rendering it insufficient to support probable cause and, separately, that the good faith exception does not apply. Defendant also argues, in the alternative, that the forensics lab improperly searched the computers before the search warrant was issued,[1] *id.* at 13-14, and that the inevitable discovery doctrine does not apply, *id.* at 14-16.

As to the legality of the Residence Search Warrant, Defendant contends that evidence obtained through the search of the Residence—which relied on evidence obtained under the Computer Search Warrant—should be suppressed as fruit of the poisonous tree, *id.* at 17-19, and that the search of the Residence was conducted recklessly and in bad faith, *id.* at 19-20.

### A. *Computer Search Warrant*

In cases where a search is supported by a warrant, the Court must suppress evidence only if the defendant proves, by a preponderance of the evidence, that: (1) the good faith exception to the exclusionary rule does not apply; and (2) that no probable cause for the warrant existed. *See*

---

[1] Defendant argues that the Government improperly searched his computers before the issuance of the November 7, 2018 Computer Search Warrant because, according to the Report of Examination, the "[e]xamination was conducted between October 16, 2018 and February 5, 2019." The Court notes, however, that the "Report of Examination" states that the examination was conducted pursuant to a "signed search warrant" and that the "supporting affidavit was reviewed." Aside from the Report of Examination's broad date range, Defendant points to no other evidence of a warrantless search. Accordingly, the Court finds that Defendant has not met his burden to show a Fourth Amendment violation. *See United States v. Ellis*, 330 F.3d 677, 679 (5th Cir. 2003).

4

*United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005); *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003).

To determine whether "the good faith exception to the exclusionary rule applies," the Court considers whether "a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Richardson*, 478 F. App'x 82, 87 (5th Cir. 2012) (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984)); *see also United States v. Alvarez*, 127 F.3d 372, 374 (5th Cir. 1997) ("The Fourth Amendment's exclusionary rule will not bar the admission of evidence obtained with a warrant later found to be invalid so long as the executing officers acted in reasonable reliance on the warrant.") (citing *Leon*, 468 U.S. at 920)). The good faith exception does not apply if one of four circumstances is present:

> (1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

*Payne*, 341 F.3d at 399-400. Whether the exception applies will "depend on an examination of the affidavit by the reviewing court," *id.* at 400 (quoting *United States v. Gant*, 759 F.2d 484, 487-88 (5th Cir. 1985)), but "all of the circumstances [surrounding issuance of the warrant] may be considered." *Id.* (quoting *Leon*, 468 U.S. at 922 n.23).

If the good faith exception applies, the court "need not reach the question of probable cause." *United States v. Massi*, 761 F.3d 512, 525 (5th Cir. 2014) (quoting *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997)); *see also Payne*, 341 F.3d at 399 (if the good faith exception applies, the court "need not reach the question of probable cause for the warrant" unless it presents a novel legal issue needed to guide future action by law enforcement officers and

5

magistrates); *United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015) ("Our analysis usually ends if the good faith exception applies.").

If the good faith exception does not apply, the court considers "whether 'the magistrate had a substantial basis for' determining that probable cause [to issue the warrant] existed." *United States v. Pawlak*, 935 F.3d 337, 347 (5th Cir. 2019) (quoting *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999)). To determine if probable cause existed, the court "look[s] at the totality of the circumstances to determine if there was 'a substantial basis for concluding that a search would uncover evidence of wrongdoing . . . .'" *United States v. Womack*, 675 F. App'x 402, 407 (5th Cir. 2017) (quoting *Ill. v. Gates*, 462 U.S. 213, 230-31 (1983)). An affidavit would not support a finding of probable cause if it included only "[c]onclusory allegations." *Id.* (citing *Gates*, 462 U.S. at 235).

Suppression of evidence is a "last resort, not [a] first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). The primary purpose of the exclusionary rule is to "deter future unlawful police conduct[.]" *United States v. Calandra*, 414 U.S. 338, 347 (1974). The Supreme Court has rejected indiscriminate applications of the exclusionary rule and held it to be applicable only "where its remedial objectives are thought most efficaciously served – that is, where its deterrence benefits outweigh its substantial social costs." *Id.* (quoting *Leon*, 468 U.S. at 907; *Calandra*, 414 U.S. at 348; *Pa. Bd. Of Prob. and Parole v. Scott*, 524 U.S. 357, 363 (1998) (quotation marks and internal citations omitted). Thus, the exclusionary rule applies only where it "result[s] in appreciable deterrence" of police misconduct, and such deterrence outweighs the costs. *Herring v. United States*, 555 U.S. 135, 141 (2009) (citing *Leon*, 468 U.S. at 909-10).

### (1) *"Bare Bones" Affidavit*

An affidavit that is "so deficient in demonstrating probable cause that it renders an officer's belief in its existence completely unreasonable" is commonly referred to as a "bare bones"

6

affidavit. *United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997). "'Bare bones' affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992) (concluding an affidavit was not "bare bones" where it contained facts that the confidential informant observed, not "mere conclusions"); *see also Cisneros*, 112 F.3d at 1278-79 (finding affidavit more than "bare bones" where it was executed by an experienced agent and provided a "detailed description of the premises to be searched," summarized the agent's experience, and explained "why, based on the agent's experience, he expected to find evidence of drug trafficking on the premises"); *United States v. Brown*, 941 F.2d 1300, 1303 n.1 (5th Cir. 1991) (providing an example of a "bare bones" affidavit as one that merely states the affiant "has cause to suspect and does believe" that illegal activity occurred on the subject premises).

The Court finds that the Yates Affidavit was not "bare bones" such that it rendered the executing officer's belief in the existence of probable cause underlying the Computer Search Warrant entirely unreasonable. Detective Yates, an experienced peace officer in the Glenn Heights Police Department, detailed key facts: (1) Mrs. Hanes uncovered web pages visited by Defendant on the computers that they both used; (2) Mrs. Hanes's child witnessed Defendant destroying DVDs and CDs at the Residence after Mrs. Hanes removed the computers; and (3) Mrs. Hanes knew that Defendant was addicted to pornography but "failed to realize what kind of porn [Defendant] would watch." Defendant argues that the Yates Affidavit omitted key details by failing to specify what *kind* of websites Mrs. Hanes saw or what *kind* of CDs and DVDs Defendant destroyed. *See* Motion 12. In conducting the good faith inquiry, however, the Court may consider all of the circumstances surrounding the issuance of the warrant. *Pope*, 467 F.3d at 916.

7

The Court finds the context of the Yates Affidavit to be significant. The Yates Affidavit explicitly states that Mrs. Hanes brought the computers to the police "after she realized her husband [Defendant] was possibly looking at child pornography on one or both computers." Yates Affidavit at 2. Thus, the affiant's use of "web pages" and "porn" in the affidavit is clearly in reference to "child pornography web pages" and "child pornography," respectively, as this was the subject of and expressed reason for Mrs. Hanes's reporting. And Defendant's use of a Tor Browser to visit these web pages provides further context. *See Rios v. United States*, No. 7:15-CR-00775-1, 2019 WL 5228704, at *2 (S.D. Tex. Aug. 12, 2019) ("A TOR browser is designed to hide or disguise the user's I.P. address and is commonly used by child pornography collectors."). Moreover, considering Mrs. Hanes's observations regarding "web pages" Defendant was visiting, with his use of the Tor Browser, and discussion of Defendant's pornography addiction, in conjunction with Mrs. Hanes's "fail[ure] to realize what kind of porn [Defendant] would watch," the Court finds that an executing officer could reasonably believe in the existence of probable cause for the Computer Search Warrant. Indeed, these attestations go beyond stating, in conclusory fashion, that Mrs. Hanes "ha[d] cause to suspect and [did] believe" that a child pornography offense was being committed. *Brown*, 941 F.2d at 1303 n.1.

Considering Detective Yates's attestations, and "all of the circumstances" surrounding the issuance of the Computer Search Warrant, *see Leon*, 468 U.S. at 922 n.23, the Court finds that the Yates Affidavit did not contain mere conclusory statements and provided sufficient indicia of probable cause such that an executing officer's belief in the existence of such probable cause was not completely unreasonable. The Court further finds that Defendant has not shown how additional clarifying details, such as what a Tor Browser is, were necessary in light of the circumstances surrounding and context of the Yates Affidavit.

Because the good faith exception applies, the Court needs not reach the second step of determining whether the State District Judge had a substantial basis for determining that probable cause to issue the Computer Search Warrant existed. *See Massi*, 761 F.3d at 525. And because the Court finds that the evidence obtained from the Computer Search Warrant is admissible, the Court needs not examine whether the inevitable discovery doctrine applies, as that doctrine exists to allow for the admission of otherwise inadmissible evidence. *See Nix v. Williams*, 467 U.S. 431, 443-44 (1984) (inevitable discovery doctrine is an *exception* to exclusionary rule).

### (2) *Consent to Search*

Alternatively, the Court finds that the search of the computers was valid due to Mrs. Hanes's consent to the search. "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Ga. v. Randolph*, 547 U.S. 103, 106 (2006) (citing *Ill. v. Rodriguez*, 497 U.S. 177 (1990); *United States v. Matlock*, 415 U.S. 164 (1974)).

"To justify a warrantless search based on consent received from a third party, the Government must prove that the third party has either actual or apparent authority to consent." *United States v. Allen*, 250 F. App'x 9, 12 (5th Cir. 2007) (citing *United States v. Gonzalez*, 121 F.3d 928, 938 (5th Cir. 1997), *overruled on other grounds by United States v. O'Brien*, 560 U.S. 218 (2010)). "To establish that a third party had actual authority to consent, the government must demonstrate mutual use of the property by persons generally having joint access or control for most purposes." *Id.* (quoting *Gonzalez*, 121 F.3d at 938). For a court to find that a third party had apparent authority to consent, "the [g]overnment 'need demonstrate only that the officers reasonably believed that the third party was authorized to consent.'" *Id.* (quoting *Gonzalez*, 121 F.3d at 938). "[T]he validity of a search grounded in third-party consent requires an intensely fact-

9

specific inquiry[.]" *United States v. Shelton*, 337 F.3d 529, 535 (5th Cir. 2003). And existence of consent is determined based on the totality of the circumstances. *United States v. Freeman*, 482 F.3d 829, 831-32 (5th Cir. 2007).

It is evident that the Glenn Heights Police Department reasonably believed that Mrs. Hanes was authorized to consent to the search of the computers. Mrs. Hanes signed a "Permission to Search" form that provided permission to search the premises and property both inside and outside of the Residence—which would include the computers. *See* Resp. Ex. 2. Moreover, the Yates Affidavit explicitly reflects Officer Yates's understanding that the two computers "belong[ed] to [Defendant] . . . and his wife." Yates Affidavit at 2. This reasonable belief regarding Mrs. Hanes's apparent authority over the computers is bolstered by Mrs. Hanes's testimony at the suppression hearing that the computers were used by the "whole family," including the children and herself, and were located in an office in the Residence to which the entire family had access. *See* Transcript of Suppression Hearing at 16-17. Further, when Mrs. Hanes removed the computers from the Residence, Defendant did not object to or did not notice their removal. *Id.* at 20 ("Q. And for whatever reason, he didn't notice the computers or he didn't mention it to you, correct? A. Correct."); *see also* Yates Affidavit at 2 (" [Mrs. Hanes] stated [Defendant] was not aware that the computers are missing."). These facts constitute evidence of joint control. *See United States v. Gonzalez*, 508 F. App'x 288, 290 (5th Cir. 2013) (third-party consent was based in actual and apparent authority where defendant's girlfriend consented to search of locked brief case because she had been living in the apartment for about a month, the defendant had given her the combination to the briefcase, and the defendant left the briefcase at the apartment when he was away). Although Mrs. Hanes and Defendant kept separate profiles on the computers, and she bypassed his personal profile's password to view his files and browser history, *see* Transcript of

Suppression Hearing at 34, the Court finds upon considering the "totality of the circumstances," that the keeping of separate internal, password-protected computer profiles does not negate Mrs. Hanes's actual and apparent authority over the computers themselves.[2] Accordingly, the Court finds that it was not unreasonable for the Glenn Heights Police Department to believe Mrs. Hanes had authority to consent to the search—especially where the computers were located in a shared family office and used by all members of the family, and where Defendant either did not notice or did not object to their removal. *See Ill.*, 497 U.S. at 186. The Court thus finds that Mrs. Hanes's third-party consent to search was valid.

### B. *Residence Search Warrant*

#### (1) *Fruit of the Poisonous Tree*

Because the Court finds that Defendant has not proven that the search of the computers was in violation of the Fourth Amendment, it need not consider Defendant's argument that the evidence obtained via the search of his Residence should be excluded as fruit of the poisonous tree. *See United States v. Reed*, 838 F. App'x 879, 881 (5th Cir. 2021) (Mem.) ("As there is no error in the denial of [the defendant's] motion to suppress the search of his residence, we need not consider his argument that his statements should be excluded as the fruit of the poisonous tree."); *United States v. Hernandez*, 670 F.3d 616, 620 (5th Cir. 2012) ("evidence that is derivative of an illegal search" is fruit of the poisonous tree and is prohibited under the exclusionary rule) (quoting *United States v. Singh*, 261 F.3d 530, 535 (5th Cir. 2001)).

---

[2] The Court also notes that Defendant has not cited any binding authority indicating that the keeping of separate computer logins, alone, is more probative than other evidence regarding actual or apparent authority over a computer device.

### (2) *Search Conducted Recklessly and in Bad Faith*

A defendant is entitled to an evidentiary hearing on a motion to suppress if he shows that: (1) allegations in a supporting affidavit were a deliberate falsehood or made with a reckless disregard for the truth; and (2) the remaining portion (if any) of the affidavit is not sufficient to support a finding of probable cause. *See United States v. Dickey*, 102 F.3d 157, 161-62 (5th Cir. 1996). Even if a defendant makes a showing of deliberate falsity or reckless disregard for the truth by law enforcement officers, he is not constitutionally entitled to a hearing "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." *United States v. Privette*, 947 F.2d 1259, 1261 (5th Cir. 1991) (quoting *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)).

Here, without making any preliminary findings on the merits, the Court granted Defendant a hearing on the Motion. From the testimony evinced at the July 2, 2021 hearing, and the documents concurrently filed with the Motion, it remains clear that Defendant's chief basis for arguing that the search of his Residence search was reckless is that the Glenn Heights Police Department used information obtained from what Defendant contends to be an unlawful search of the computers, pursuant to the Computer Search Warrant. Having determined that the search of Defendant's computers was lawful, the Court finds Defendant's argument regarding the subsequent search of the Residence to be without merit. Further, the Court notes that the Kellis Affidavit, which formed the basis for the Residence Search Warrant, contains several probative allegations beyond the scope of the Yates Affidavit—notably, alleged sexual acts by Defendant occurring at the Residence towards or unto his minor children and niece. *See* Kellis Affidavit at 5-8. Accordingly, the Court finds that the search of the Residence was not conducted recklessly or in bad faith.

### III. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendant's Motion to Suppress.

**SO ORDERED.**

SIGNED July 12, 2021.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**